**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| KEVIN ROGERS, Individually and d/b/a | ) | |
| THE LAW OFFICES OF KEVIN ROGERS, and | ) | |
| RAYMOND JEFFREY BAYSTER, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR RESCISSION OF POLICY AND DECLARATORY JUDGMENT

Plaintiff, United States Fire Insurance Company ("U.S. Fire"), by and through its undersigned counsel, Kennedys CMK, as and for its Complaint for Rescission of Policy and Declaratory Judgment states as follows:

### NATURE OF THE ACTION

1. This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, and for rescission of U.S. Fire Lawyers Professional Liability Insurance Policy No. 580-317230-7. In this action, U.S. Fire seeks a determination of its rights and obligations under the insurance policy issued to The Law Offices of Kevin Rogers in connection with an underlying lawsuit filed by Raymond Bayster, which asserts certain claims against Kevin Rogers, Individually and d/b/a The Law Offices of Kevin Rogers.

### JURISDICTION AND VENUE

2. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

3.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states and the amount in controversy exceeds $75,000.

4.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a) as certain defendants reside in the Northern District of Illinois and the events at issue took place in the Northern District of Illinois.

5.     The Underlying Action (as defined herein) is pending in the Circuit Court of Cook County, Illinois.

## THE PARTIES

6.     Plaintiff in this action is United States Fire Insurance Company ("U.S. Fire"), which is a Delaware corporation with its principal place of business in New Jersey.

7.     Upon information and belief, Defendant Kevin Rogers ("Rogers") is an adult individual who resides in and is a citizen of Illinois.

8.     Upon information and belief, Defendant Law Offices of Kevin Rogers (collectively with Defendant Kevin Rogers, "Rogers") is a limited liability corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at 307 N. Michigan Ave, Suite 305, Chicago, Illinois.

9.     Upon information and belief, Defendant Raymond Jeffrey Bayster ("Mr. Bayster") is an adult individual who resides in and is a citizen of Oxnard, California.

10.     U.S. Fire issued a policy of insurance to the Law Offices of Kevin Rogers, as is more fully described below.

11.     The scope of the coverage available to Kevin Rogers and The Law Offices of Kevin Rogers is governed by the terms, conditions, and exclusions of the policy.

## THE UNDERLYING ACTION

12.     On April 16, 2018, Mr. Bayster filed a lawsuit against attorney Kevin Rogers, and his law firm, The Law Offices of Kevin Rogers, in an action styled *Raymond Jeffrey Bayster v. Kevin Rogers, Individually and d/b/a The Law Offices of Kevin Rogers*, No. 2018-L-003810, in the Circuit Court of Cook County (the "Underlying Action"). A true and correct copy of the complaint in the Underlying Action (the "Complaint") is attached hereto as Exhibit A.

13.     In the Complaint, Mr. Bayster alleges a cause of action for legal malpractice in connection with legal services Rogers provided Mr. Bayster with respect to a trust created by Mr. Bayster's mother and father (the "GST Family Trust"). Ex. A, ¶ 3. The Complaint further alleges that Mr. Bayster's cause of action for legal malpractice was based upon breach of retainer agreements between himself and Rogers. Ex. A, ¶ 1.

14.     The Complaint alleges the GST Family Trust was created for the benefit of Mr. Bayster, his sister, and his parents and was drafted by an unnamed law firm. It is further alleged that the trust documents contained numerous ambiguities which became apparent upon the death of Mr. Bayster's' parents. Ex. A, ¶¶ 4, 5.

15.     The Complaint alleges that upon revelation of defects in the trust documents, the trustee of the trust had its lawyers create the "Virtual Representation Agreement" (the "VRA"), which extended the statute of limitations for a claim of legal malpractice relating to the preparation of the trust documents. Ex. A, ¶¶ 5, 7, 11.

16.     Mr. Bayster alleges in the Complaint that, at the time of the negotiation and execution of the VRA, Rogers was the attorney for Mr. Bayster and that Rogers was "well aware of the issues involved in correcting the trusts and the responsibility of the drafter for those expenses", but at no time ever advised Mr. Bayster there was a cause of action for legal malpractice

against the attorneys that drafted the trust documents. Exhibit A, ¶¶ 12, 13, 19.

17.     The Complaint further alleges that Rogers served as Mr. Bayster's attorney at the time of the negotiation and execution of the VRA and that, at no time, did Rogers inform Mr. Bayster that the VRA contained general release language that prevented Mr. Bayster from proceeding with an action against the trustee or against the trustee and/or trustees attorneys. Ex. A, ¶¶ 18, 21.

18.     The Complaint alleges that, in response to learning that he no longer could proceed with a cause of action against the attorneys that prepared the trust documents, Mr. Bayster brought complaints against Rogers with regulatory agencies. Ex. A, ¶ 20.

19.     The Complaint alleges that Rogers owed a duty of care to Mr. Bayster best defined as what a reasonable attorney would do under similar circumstances practicing the same type of law in and around the Chicagoland area, and that Rogers held himself out as experienced in the handling of legal malpractice matters. Ex. A, ¶ 15.

20.     The Complaint alleges that as a direct and proximate result of: (1) Rogers' failure to identify and pursue each cause of action for malpractice within the Statute of Limitations periods as they existed against the drafters of the GST Family Trust and drafters of the VRA; and (2) Rogers' recommendation to Mr. Bayster to enter into the VRA, Mr. Bayster was required to deduct from his share of the inheritance, and the value of the GST Family trust which directly benefited him, a sum of money in excess of $300,000, due to the wrongful and unreasonable drafting of the VRA. Ex. A, ¶¶ 21, 23.

**THE POLICY**

21.     U.S. Fire issued policy number 580-317230-7 to Named Insured Law Offices of Kevin Rogers, with limits of liability of $500,000 Each Claim and $1,000,000 Policy Aggregate,

and with effective dates of October 1, 2017 to October 1, 2018 (the "Policy"). A true and correct

copy of the Policy is attached hereto as Exhibit B.

22.     The Policy contains an insuring agreement which states, in pertinent part, as

follows:

**I.      INSURING AGREEMENT**

**A.  Coverage**

Subject to the Limit of Liability stated in Item 3. of the Declarations, the ***Insurer***
shall pay on behalf of the ***Insured*** all ***Damages*** and ***Defense Expenses*** in excess of
the Deductible as stated in Item 4. of the Declarations that the ***Insured*** becomes
legally obligated to pay as a result of a ***Claim*** first made against the ***Insured*** and
reported in writing to the ***Insurer*** during the ***Policy Period*** or during any applicable
Extended Reporting Period, by reason of a negligent act, error or omission in the
performance of ***Professional Services*** by the ***Insured*** or by someone for whom the
***Insured*** is legally responsible.

\*\*\*

23.     The Policy contains the following relevant definitions:

**IV. DEFINITIONS**

\*\*\*

***Claim*** means:

      (a)  a demand or civil proceeding seeking ***Damages***, or
      (b)  service of suit seeking ***Damages***, or
      (c)  institution of alternative dispute proceedings seeking ***Damages***, or
      (d)  a demand for services.

\*\*\*

***Disciplinary Proceeding*** means a forum in which a complaint alleging violation of
any professional rule or professional misconduct is brought before a tribunal of
competent jurisdiction which shall make a determination subject to appeal or other
review and/or a final and enforceable determination as to whether such alleged rules
or misconduct is to be the subject of discipline.

\*\*\*

5

*Insured* means the ***Named Insured***, Predecessor Firm, and:

> (a) any present or future principal, partner, director, officer, member or employee of the ***Named Insured***;

***

24.     Pursuant to the operation of the Illinois Amendatory Endorsement, the definition of "Damages" in the Policy was amended to provide, in pertinent part, as follows:

> ***Damages*** means a monetary judgment, monetary award or monetary settlement negotiated with the ***Insurer's*** written consent. Pre- and post- judgment interest awarded against the ***Insured*** shall be deemed an element of ***Damages*** which are payable in addition to the Limit of Liability as a supplementary payment.

> ***Damages*** shall not include:

> > (a) any restitution, disgorgement, unjust enrichment or illegal profits by an **Insured***;*

> > (b) return or offset of fees or over-charges or amounts which are the subject of fee disputes;

***

25.     Pursuant to endorsement, the definition of "Professional Services" in the Policy was amended to provide, in pertinent part, as follows:

> ***Professional Services*** means:

> > (a) those service [*sic*] performed for a client in the ***Insured's*** capacity as a lawyer for a monetary fee, and

***

> > (f) those services as an administrator, conservator, receiver, executor, trustee, guardian, or any similar fiduciary capacity, or court-appointed trustee, however, no coverage shall apply to any loss sustained by any ***Insured*** as the beneficiary or distribute of any trust or estate

***

26.     The Exclusions section of the Policy contains the following relevant exclusion:

## V.  EXCLUSIONS

This policy does not apply to any *Claim* based upon or arising out of:

*** 

**L.**  any facts or circumstances of which any *Insured* had knowledge as of the effective date of this policy and which could reasonably have been expected to give rise to a *Claim*;

***

27.     The General Conditions section of the Policy provides, in pertinent part, as follows:

## VI. GENERAL CONDITIONS

***

### G.  Representations

In granting coverage to the *Insureds*, it is agreed that the *Insurer* has relied upon the representations and statements contained in the application for this policy (and all such previous applications submitted, or made part of any previous policy which this policy may succeed in time) including materials submitted therewith, as being accurate and complete and shall be the basis of the contract and shall become part of such policy as if physically attached. Such representations and statements are deemed to be material to the risk assumed by the *Insurer*.

***

## <u>THE DISPUTE</u>

28.     Rogers and his law firm have sought a defense and indemnification from U.S. Fire under the Policy for the Complaint filed by Mr. Bayster in the Underlying Action

29.     U.S. Fire has determined through its coverage investigation that it owes no obligation under the Policy to defend or indemnify Rogers or his law firm in connection with the claims asserted in the Complaint in the Underlying Action.

30.     U.S. Fire has advised Rogers in writing that U.S. Fire disclaims any obligation under the Policy to provide a defense to or indemnify him or his law firm in connection with the claims asserted in the Complaint in the Underlying Action.

31.     U.S. Fire now brings this action to obtain a judicial determination that it is entitled to rescind the Policy and, alternatively, that it owes no duties under the Policy to defend or indemnify Rogers or his law firm in connection with the claims asserted in the Complaint in the Underlying Action.

## COUNT I
## (Rescission Of The Policy)

32.     U.S. Fire incorporates by reference herein paragraphs 1 through 31, as if the same were fully set forth at length.

33.     On September 14, 2017, Rogers submitted a Lawyers Professional Liability Renewal Application to U.S. Fire seeking the renewal of professional liability coverage for The Law Offices of Kevin Rogers (the "Insurance Application"). A true and correct copy of the Insurance Application is attached hereto as Exhibit C.

34.     In Section 4. Claims of the Insurance Application, Claims, Rogers was directed to provide U.S. Fire with answers to the following inquiries and to complete a CLAIM SUPPLEMENT for each claim or potential claim identified in response thereto:

4. After inquiry of all attorneys and staff of the firm, within the past year have any past or present personnel:

a.  been subject of any regulatory investigation or inquiry; suspended or disbarred from practice; or charged, indicted or been convicted of any criminal charge?

Yes [  ] No [  ]

If *"Yes"*, please provide details and dates:

_____

b.      know of any professional liability claims made against the firm, its affiliates or its personnel?

Yes [  ] or No [  ]

c.      become aware of any act, error or omission or fee dispute which might become the basis of a claim against the firm or its personnel?

Yes [  ] or No [ ]

35.      Section 4. Claims of the Insurance Application further provides:

**NOTE: THE POLICY FOR WHICH THIS APPLICATION IS BEING MADE SHALL NOT APPLY TO ANY INCIDENTS OR CLAIMS DETAILED OR WHICH SHOULD HAVE BEEN DETAILED IN QUESTION 4 a, b or c ABOVE.**

***If "Yes" to 4 b or c above, complete the CLAIM SUPPLEMENT for reach claim or potential claim***

***

36.      In response to the inquiries contained in Section 4. Claims of the Insurance Application, Rogers marked the "No" box as the response to inquiries 4 a, b, and c, thereby representing that neither he nor his law firm had, within the year prior to the submission of the Insurance Application on September 14, 2017, been the subject of any "regulatory investigation or inquiry" and further was not aware during that time period "of any act or omission or fee dispute which might become the basis of a claim." Ex. C, p. 4.

37.      Upon information and belief, at the time he submitted the Insurance Application to U.S. Fire on September 14, 2017, Rogers was aware and/or had knowledge of certain investigations and/or inquiries of him that were performed by the Illinois Attorney Registration and Discipline Commission within the prior year in connection with Mr. Bayster's complaints regarding Rogers' alleged impropriety for not filing an attorney malpractice action on Mr. Bayster's behalf against the drafters of the trust documents for the GST Family Trust  and Rogers' alleged breach of a fee-splitting agreement with Mr. Bayster.

9

38.     Upon information and belief, at the time he submitted the Insurance Application to U.S. Fire on September 14, 2017, Rogers was aware of "act(s), error(s) or omission(s) or fee dispute(s)" within the prior year related to his representation of Mr. Bayster which "might become the basis of a claim against the firm or its personnel."

39.     The General Conditions section of the Policy includes Paragraph G. Representations which provides that the:

> "Insurer has relied upon the representations and statements contained in the application for this policy (and all such previous applications submitted, or made part of any previous policy which this policy may succeed in time) including materials submitted therewith, as being accurate and complete and shall be the basis of the contract and shall become part of such policy as if physically attached. Such representations and statements are deemed to be material to the risk assumed by the Insurer."

Ex. B., p. 13.

40.     Upon information and belief, at the time he submitted the Insurance Application to U.S. Fire on September 14, 2017, Rogers concealed and/or misrepresented facts and/or information which were material to the risk assumed by U.S. Fire in issuing the Policy.

41.     Based on Rogers' misrepresentation and/or concealment of facts and/or information in the Insurance Application he to U.S. Fire on September 14, 2017 which were material to the risk assumed by U.S. Fire in issuing the Policy, U.S. Fire is entitled to rescind the Policy and void the Policy *ab initio*.

WHEREFORE, US Fire seeks a judgment that, U.S. Fire is entitled to rescind the Policy and void the Policy *ab initio*.

## COUNT II
### (Knowledge Of Facts Or Circumstances Exclusion)

42.     U.S. Fire incorporates by reference herein paragraphs 1 through 41, as if the same were fully set forth at length.

43.     Upon information and belief, Mr. Bayster filed two complaints against Rogers with the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois ("ARDC"). True and correct copies of the ARDC complaints are attached hereto as Exhibit D. The complaints requested that the ARDC perform investigations into Rogers' alleged impropriety for not filing an attorney malpractice action on Mr. Bayster's behalf, in connection with the drafting of the GST Family Trust, as well as Rogers's alleged breach of a fee-splitting agreement between Mr. Bayster and Rogers.

44.     In letters dated June 30, 2017 and July 5, 2017, Samuel Manella, the attorney who represented Rogers during the course of the ARDC's investigations, responded to the second complaint filed against Rogers by representing that:

> "After alleging in his first ARDC complaint Mr. Rogers' impropriety for not filing an attorney malpractice action on his behalf, Mr. Bayster now asserts in this second ARDC complaint that there was a fee-splitting agreement between him and Rogers."

(Ex. E pgs. 2, 6.)

True and correct copies of the June 30 and July 5 letters are attached hereto as Exhibit E.

45.     The Policy contains Exclusion L which precludes coverage for "any *Claim* based upon or arising out of . . . any facts or circumstances of which any *Insured* had knowledge as of the effective date of this policy and which could reasonably have been expected to give rise to a *Claim*". Ex. B., p. 11.

46.     The effective date of the Policy is October 1, 2017.

47.     The Complaint in the Underlying Action alleges that Mr. Bayster brought complaints against Rogers with regulatory agencies following the execution of the VRA.

48.     Through his attorney, Rogers acknowledged in the June 30, 2017 and July 5, 2017 letters to the ARDC that Bayster had, prior to the dates of those letters, brought a complaint with

the ARDC related to Rogers' alleged "impropriety for not filing an attorney malpractice action on his behalf."

49.     In addition, through his attorney, Rogers acknowledged in the June 30, 2017 and July 5, 2017 letters to the ARDC that Mr. Bayster had, prior to the dates of those letters, also filed complaints against Rogers with the ARDC related to Rogers' alleged breach of a fee-splitting agreement with Mr. Bayster.

50.     The June 30, 2017 and July 5, 2017 letters to the ARDC in which Rogers' lawyer responded to Mr. Bayster's ARDC complaints demonstrate that Rogers was aware of "facts or circumstances" prior to the October 1, 2017 effective date of the Policy that could have reasonably been expected to, and in fact did, give rise to a claim against Rogers and his law firm.

51.     Accordingly, even if U.S. Fire is found to not be entitled to rescind and void the Policy *ab initio* based upon Rogers' concealment and/or misrepresentation of material facts and information in the Insurance Application, the Policy would not afford coverage to Rogers in connection with the Underlying Action because coverage for the claims asserted therein is precluded by operation of Exclusion L of the Policy.

WHEREFORE, U.S. Fire seeks a judgment that it owes no duty under the Policy to defend or indemnify Rogers in connection with the claims asserted against him and his firm in the Complaint in the Underlying Action.

## PRAYER FOR RELIEF

Plaintiff U.S. Fire hereby respectfully requests the entry of an order and judgment in its favor and against Defendants Kevin Rogers, The Law Offices of Kevin Rogers, and Raymond Jeffrey Bayster, declaring as follows:

   a.   This court has jurisdiction over the parties and the subject matter of this litigation;

b. U.S. Fire Lawyers Professional Liability Insurance Policy No. 580-317230-7 is rescinded and determined to be void *ab initio*; or

c. Alternatively, the Policy does not provide coverage to Kevin Rogers, individually, and d/b/a The Law Offices of Kevin Rogers for the claims asserted in the Complaint in the Underlying Action;

d. U.S. Fire does not owe a duty under the Policy to defend Kevin Rogers, individually, and d/b/a The Law Offices of Kevin Rogers, or reimburse defense costs incurred by Kevin Rogers, individually, and d/b/a The Law Offices of Kevin Rogers, in connection with the claims asserted in the Complaint in the Underlying Action;

e. U.S. Fire does not owe a duty under the Policy to indemnify Kevin Rogers, individually, and d/b/a The Law Offices of Kevin Rogers in connection with the claims asserted in the Complaint in the Underlying Action;

f. U.S. Fire is entitled to an award of its costs; and

g. Such other further relief as this Court deems just and appropriate.

Respectfully Submitted,

UNITED STATES FIRE INSURANCE COMPANY

Dated: June 28, 2018        */s/ James J. Hickey*

By:    James J. Hickey
One of the Attorneys for Plaintiff
United States Fire Insurance Company

Atty. No.: 6308024
James J. Hickey
James.Hickey@Kennedyscmk.com
Xavier Vergara
Xavier.Vergara@Kennedyscmk.com
KENNEDYS CMK
100 North Riverside Plaza, Suite 2100
Chicago, IL 60606
Phone: (312) 800-5000
Fax: (312) 800-5010